UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LABORERS' LOCAL UNION NO. 472 & 172, et al.**<br><br>      Petitioners,<br><br>v.<br><br>**GRANT CONSTRUCTION ASSOC.,**<br><br>      Respondent. | Civ. No. 2:14-7607 (KM)(JBC)<br><br>OPINION |

Before the Court is a motion to confirm an arbitration award. Although the relevant portions of the applicable collective bargaining agreement were not originally attached to the confirmation petition, they have now been supplied. I now find a sufficient basis to confirm the arbitrator's decision.

## Background

Laborers' Local Union Nos. 172 and 472 are unions representing construction workers. According to the Petitioners, a construction company, Respondent Grant Construction Associates, agreed to be bound by the terms of a collective bargaining agreement with the Unions. (O'Hare Affidavit, ¶ 4) Under the terms of that agreement, Grant was required to make contributions to three funds that provide "fringe benefits" to union members: the Welfare Fund; the Pension Fund; and the Safety, Education, and Training Fund. The union alleges that Grant Construction failed to make the required contributions during the period July 1, 2014 through July 31, 2014. (Award,[1] ¶ 1)

---

[1] Citations to the record will be abbreviated as follows:

"Award" – Arbitration Award and Order, Dkt. No. 1, Exh. B.
"CBA" – Effective March 1, 2012 to February 28, 2015, Agreement entered into
      between Utility…Locals 472 and 172, Dkt. No. 5-1.
"O'Hare Affidavit" – Affidavit of Edward H. O'Hare, Dkt. No 2-1.

1

The unions, along with the fringe benefit funds themselves and their law firm (which is one of the Petitioners) (collectively, the "Funds") brought suit against Grant in an arbitration proceeding. It seems that Grant Construction did not appear or otherwise defend itself before the arbitrator. (*See* Award, 1) ("the Employer having failed to appear after due notice..."). Grant likewise has not appeared or otherwise defended the case before this Court.

The arbitrator, J.J. Pierson, issued an "Arbitration Award and Order." Pierson found that Grant was bound by the CBA and was delinquent in making some $34,651.93 in fringe benefit contributions for the period July 1, 2014 through July 31, 2014. (Award, ¶ 1) Pierson ordered several forms of relief:

1) That Grant pay to the Funds the $34,651.93 in delinquent contributions, plus interest at the rate of 8% per annum. (Award, ¶ 1)

2) That Grant pay attorneys' fees at the rate of 20% of the delinquent contributions, plus interest at the rate of 10% per annum. (Award, ¶ 2)

3) That in addition to those attorneys' fees, should the attorneys expend any effort to collect the funds after the entry of any court judgment, Grant should pay as attorneys' fees an additional 10% of the total amount due to the Funds. (Award, ¶ 9)

4) That Grant submit to an audit of its payroll records. (Award, ¶ 3)

5) That Grant pay the arbitrator's fee of $1,500.00. (Award, ¶ 4)

The Funds have petitioned this Court (Dkt. No. 2) to confirm the arbitrator's award.

## Discussion

### Legal standard

A district court's review of an arbitration award is highly deferential. Courts have described the review as "severely limited," *Mut. Fire, Marine &*

2

*Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989); *Swift Indus. V. Botany Indus.*, 466 F.2d 1125, 1130 (3d Cir. 1972). The Third Circuit has explained that "the terms of the arbitral award will not be subject to judicial revision unless they are completely irrational." *Mut. Fire*, 868 F.2d at 56. Accordingly, a court may vacate an arbitration award only in extreme circumstances. "Only when an arbitrator acted in manifest disregard of the law, or if the record before the arbitrator reveals no support whatsoever for the arbitrator's determination, may a district court invade the province of the arbitrator." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 380 (3d Cir. 1995) (internal quotation omitted). Indeed, so long as the arbitrator's award "draws its essence" from the Agreement in question, a Court should not vacate the award.

> A court may vacate an arbitrator's award if it does not draw its essence from the collective bargaining agreement, but instead represents the arbitrator's own brand of industrial justice. This exception is a narrow one. An arbitration award draws its essence from the bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention.

*Tanoma Min. Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 747-48 (3d Cir. 1990) (internal quotations omitted).

**The arbitration award**

Although the facts of this case are relatively simple, the record is scattered among a few filings. I therefore briefly summarize where in the record I find support for the salient portions of the arbitrator's award.

The arbitrator concluded that Grant was bound to a collective bargaining agreement with the Union. It appears that the operative agreement is the CBA covering the period March 1, 2012 through February 28, 2015. A complete version of this CBA can be found at Dkt. No. 5-1 (excerpts from this version were separately provided at Dkt. No. 1, Exh. A, and Dkt. No. 4). The Funds

3

have provided a signature page representing Grant Construction's agreement to be bound by the CBA. The signature for Grant Construction is dated January 1, 2009, while the period of delinquency occurred some three and one half years later, from July 1, 2014 through July 31, 2014. It appears that Grant Construction initially entered into a CBA that was effective for the period March 1, 2007 through February 28, 2012. (*See* Dkt. No. 5-2) I defer to the Arbitrator's finding that sworn testimony established that Grant was bound to the current version of the collective bargaining agreement. I likewise defer to the award's recitation that sworn testimony established a delinquency in the amount of $34,651.93 for the period July 1, 2014, through July 31, 2014. (Award, ¶ 1)

The arbitrator ordered Grant to pay the delinquent contributions to the Fund. Grant's obligation to pay such funds is established by Articles 33, 34, and 35 of the CBA.

In addition to ordering that Grant pay the delinquent contributions, the arbitrator ordered Grant to pay attorneys' fees (plus interest) and the arbitrator's fee. Each award finds support in the CBA at Article 42.[2]

The Arbitrator likewise ordered Grant to undergo an audit of its financial records. (Award, ¶ 3) This, too, is provided for by the CBA. (*See* CBA, Arts. 33(f) and 34(d)) I note that the audit period ordered is lengthy. The Arbitrator found a delinquency for the period July 1, 2014 through July 31, 2014. However, he ordered an audit of Grant's payroll records beginning on January 1, 2011, some three and one half years before the alleged delinquency period. Given that Grant has evidently been in business with the Unions since January of 2009,

---

[2] I note that the Arbitrator cited Article 38 of the CBA as justifying the award of these costs. This appears to be a clerical error. In a prior version of the CBA, the 2007-2012 version, Article 38 did indeed provide that in the event of a dispute over fringe benefit contributions, the losing party would pay the attorneys' fees and the arbitrator's fee to the victor (*See* Dkt. No. 5-2). The version of the CBA operative here, the 2012-2015 version, similarly provides, but does so in Article 42 (Dkt. No. 5-1). I note also that Article 42 serves as an exception to another provision of the CBA, Article 17, which provides that in all disputes arising under the CBA the parties shall bear their own costs. In short, the issue is one of numbering, not substance.

however, I cannot conclude that the Arbitrator erred in ordering such a lengthy audit period.

**Conclusion**

I will confirm the award of the arbitrator. A separate order will issue.

July 27, 2015
Newark, New Jersey

_____
Kevin McNulty
United States District Judge